IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION
CIVIL NO. _____

| | | |
|---|---|---|
| JAMES P. VANDER SALM and<br>JESSICA T. VANDER SALM, as Trustees<br>of the Judith P. Vander Salm Irrevocable Trust,<br><br>          Plaintiffs,<br><br>v.<br><br>BAILIN & ASSOCIATES, INC.,<br>the SALISBURY HILL CONDOMINIUM TRUST,<br>PETER T. KARASSIK, individually and as Trustee<br>  of the Salisbury Hill Condominium Trust,<br>JOHN L. MACKOUL, individually and as Trustee<br>  of the Salisbury Hill Condominium Trust,<br>BERNARD BAILIN, as Trustee of the Salisbury Hill<br>  Condominium Trust,<br>THOMPSON-LISTON ASSOCIATES, INC.,<br>PATRICK J. HEALY, individually,<br>ROTTI CONSTRUCTION COMPANY, INC.,<br>WALTER R. ROTTI, individually,<br>ECOTEC, INC.,<br>and PAUL J. MCMANUS, individually,<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **COMPLAINT**<br><br>and<br><br>**DEMAND<br>FOR<br>JURY TRIAL** |

Plaintiffs allege:

## **INTRODUCTION**

1.     This action is brought under the citizen suit provision of the Federal Clean Water Act ("CWA"), and various related state law theories. Defendants' deficient design, construction, and maintenance of erosion and sedimentation control systems at "Salisbury Hill," a large condominium development in Worcester, MA, result in the regular discharge of polluted stormwater to waters of the United States, including Plaintiffs' pond. As set forth below, Defendants' failures, besides being

violations of the CWA, are violations of the Massachusetts Wetlands Protection Act, and give rise to Plaintiffs' claims of negligence, nuisance, and trespass under the common law of Massachusetts. As relief, Plaintiffs seek: (a) a declaration that Defendants are in continuing violation of relevant federal and state law; (b) various injunctive relief against Defendants' continuing federal and state law violations; (c) an assessment of civil penalties and Plaintiffs' costs, including attorney fees and expert witness fees, against those Defendants who are violating the CWA; (d) an assessment of civil penalties against those Defendants who are violating the Massachusetts Wetlands Protection Act; and (e), damages under Plaintiffs' common law claims.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over Plaintiffs' federal claims under Section 505(a) of the CWA, 33 U.S.C. § 1365(a) (the CWA's citizen suit provision), and 28 U.S.C. § 1331 (federal question jurisdiction).

3.     This Court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a), because Plaintiffs' state law claims arise from the same case or controversy as Plaintiffs' federal claims.

4.     Plaintiffs have complied with the notice provisions of the CWA's citizen suit provision, 33 U.S.C. § 1365(b), as elaborated at 40 C.F.R. § 135. According to 33 U.S.C. § 1365(b)(1)(A), a citizen who intends to sue under the CWA must give the alleged violator 60 days of notice prior to filing such suit. By letter sent via certified mail on June 16, 2011, attached hereto as Exhibit A, Judith P. Vander Salm, as prospective plaintiff, notified defendants Bailin & Associates, Inc.,

and Peter T. Karassik (individually), of her intent to file suit against them under the CWA's citizen suit provision. By letter sent via certified mail on July 22, 2011, attached hereto as Exhibit B, Plaintiffs James P. Vander Salm and Jessica T. Vander Salm, as trustees of the Judith P. Vander Salm Irrevocable Trust, notified Bailin & Associates, Inc., and Peter T. Karassik (individually), that Judith P. Vander Salm's property had been transferred into said Trust, and that accordingly, trustees James P. Vander Salm and Jessica T. Vander Salm would replace Judith P. Vander Salm as named plaintiffs in the suit of which Defendants had been informed on June 16, 2011. At the time of the filing of this Complaint, more than 60 days have passed since July 22, 2011.

5.     In conformance with 40 C.F.R. § 135.2(a)(1), copies of the letters of June 16, 2011, and July 22, 2011, referred to in paragraph 4 above, were sent to Environmental Protection Agency ("EPA") Administrator Lisa P. Jackson, Region 1 EPA Administrator H. Curtis Spalding, Massachusetts Department of Environmental Protection ("DEP") Commissioner Kenneth Kimmell, and Massachusetts DEP Assistant Commissioner Anne Lowery. A copy was also sent to U.S. Attorney General Eric Holder.

6.     Under Section 505(b)(1)(B) of the CWA, 33 U.S.C. § 1365(b)(1)(B), a citizen may not commence any action against a violator of the CWA if the EPA or State has commenced, and is diligently prosecuting, a civil or criminal action in court against the violator. So far as Plaintiffs are aware, neither the EPA nor the State has commenced, and is diligently prosecuting, a civil or criminal action in court against defendants Bailin & Associates, Inc., or Peter T. Karassik.

7.      Under Section 309(g)(6)(A)-(B) of the CWA, 33 U.S.C. § 1319(g)(6)(A)-(B), a citizen may not commence a civil penalty action against a violator of the CWA if the EPA or State (under a comparable state law) has commenced, and is diligently prosecuting, an action for administrative penalties against the violator, unless the citizen's notice of intent to sue was sent prior to the commencement of the EPA or State action, and the citizen's complaint is filed within 120 days of the date on which such notice was sent. So far as Plaintiffs are aware, neither the EPA nor the State has commenced, and is diligently prosecuting, an administrative penalty action against defendants Bailin & Associates, Inc., or Peter T. Karassik, for the acts and omissions alleged as CWA violations in this complaint—that is, acts and omissions beginning in November of 2009. In the event that an EPA or State administrative penalty action has been commenced since Plaintiffs notified Defendants of their intent to sue, such action would not forestall Plaintiffs' civil penalty action, because fewer than 120 days have passed since Plaintiffs (or prospective plaintiff Judith P. Vander Salm) notified Defendants of their intent to sue.

8.      Venue is proper in the Central Division of the Massachusetts District pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the CWA violations alleged herein are occurring within this division of this district.

## **PARTIES**

### Plaintiffs

9.      Plaintiffs James P. Vander Salm, of Holden, MA, and Jessica T. Vander Salm, of Brooklyn, NY, are trustees of the Judith P. Vander Salm Irrevocable

Trust, whose sole beneficiary is Judith P. Vander Salm, and whose assets include real property located at 655 Salisbury Street, Worcester, Massachusetts. This property is more specifically described in Book 47592, Page 320, of the Worcester District Registry of Deeds.  Judith P. Vander Salm has resided at her house on this property (hereinafter, "Plaintiffs' property") for most of thirty years since purchasing the property in 1981, and continues to reside there. Judith P. Vander Salm owned the property at all times relevant to this Complaint before conveying the property to Plaintiffs, as trustees of the Judith P. Vander Salm Irrevocable Trust, in June of 2011.

10.     Plaintiffs bring this action on behalf of the Judith P. Vander Salm Irrevocable Trust, in the interests of its beneficiary Judith P. Vander Salm. All references to the interests of Plaintiffs in this Complaint shall be read as including the interests of Judith P. Vander Salm.

11.     Plaintiffs' property at 655 Salisbury Street in Worcester includes part of an unnamed pond that is located behind Judith P. Vander Salm's house. Plaintiffs own outright that part of the pond encompassed by Plaintiffs' land, and possess an easement for recreational use of the entire pond. There is no other house on the pond. The pond is fed by an unnamed stream that originates on the Salisbury Hill site.

12.     Plaintiffs' pond has been and is being adversely affected by Defendants' land-disturbing and construction activities, and by Defendants' persistent failures of stormwater management and erosion and sedimentation control. These activities and failures cause the discharge of sediment and other pollutants to Plaintiffs' pond, which pollutants severely degrade the pond's water

quality and ecology, and severely diminish its aesthetic and recreational value to Plaintiffs.

13.     Plaintiffs have been and are being adversely affected by Defendants' persistent failure to inspect, maintain, repair, and improve its deficient systems of stormwater management and erosion and sedimentation control. Such failures cause the discharge of sediment and other pollutants to Plaintiffs' pond.

14.     Plaintiffs have been and are being adversely affected by Defendants' persistent failure to report truthfully on such self-inspection reports as are required of them under the CWA. This failure to keep truthful reports deprives the EPA of such information as would facilitate its understanding of Defendants' deficient stormwater management, and obstructs or weakens such enforcement action as the EPA might take to stop or deter Defendants' continuing discharges of sediment and other pollutants to Plaintiffs' pond.

15.     Plaintiffs have been and are being adversely affected by Defendants' failure to keep a copy of their Storm Water Pollution Prevention Plan (SWPPP) on site, as is required under the CWA. This failure prevents Defendants from checking the plan to ensure that it is being followed, and thus decreases the likelihood that Defendants will adhere to such stormwater management and erosion and sedimentation control measures as might prevent the discharge of sediment and other pollutants to Plaintiffs' pond.

<u>Defendants</u>

16.     Defendant Bailin & Associates, Inc. (hereinafter, "Bailin & Associates") , is a corporation organized under the laws of Massachusetts, with a

6

principal place of business at 727 Salisbury Street, Worcester, MA, 01609.  Bailin & Associates is the developer of the Salisbury Hill Condominium development, and is the holder of a National Pollution Discharge Elimination System ("NPDES") General Permit for Stormwater Discharges from Construction Activities, as issued by the EPA pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17.     Defendant Salisbury Hill Condominium Trust is a trust established under the laws of the State of Massachusetts, and is the organization of unit owners of the Condominium. The Salisbury Hill Condominium Trust owns and maintains the Condominium's common areas for the benefit of the unit owners.

18.     Defendant Peter T. Karassik, of Sudbury, MA, besides being an owner and President of Bailin & Associates, is a trustee of the Salisbury Hill Condominium Trust, and is the individual exercising personal control over operations at the Salisbury Hill site. Mr. Karassik is also the individual directly responsible for Bailin & Associates' compliance with the terms of its NPDES permit. Mr. Karassik is thus sued (a) in his capacity as trustee of the Salisbury Hill Condominium Trust, and (b), in his individual capacity, both for his tortious conduct in directing operations at Salisbury Hill, and for his failure to effect Salisbury Hill's compliance with the terms of its NPDES permit.

19.     Defendant John L. MacKoul, of Worcester, MA, besides being an owner and officer of Bailin & Associates, is a trustee of the Salisbury Hill Condominium Trust, and at various times relevant to this complaint has exercised personal control over operations at the Salisbury Hill site. Mr. MacKoul is thus sued both (a) in his capacity as trustee of the Salisbury Hill Condominium Trust, and (b),

in his individual capacity, for his tortious conduct in directing operations at Salisbury Hill.

20.    Defendant Bernard Bailin, of Worcester, MA, besides being an owner of Bailin & Associates, is a trustee of the Salisbury Hill Condominium Trust. Mr. Bailin is sued in his capacity as trustee of the Salisbury Hill Condominium Trust.

21.    Defendant Thompson-Liston Associates, Inc. (hereinafter, "Thompson-Liston"), is a corporation organized under the laws of Massachusetts, and has a principal place of business at 51 Main Street, Boylston, MA, 01505. Thompson-Liston is the civil engineering firm that planned and designed the Salisbury Hill development, and has throughout the duration of the project consulted for Bailin & Associates on issues relating to stormwater management and erosion and sedimentation control.

22.    Defendant Patrick J. Healy is the individual engineer at Thompson-Liston who designed the erosion and sedimentation control systems for the Salisbury Hill development, and has throughout the duration of the project consulted for Bailin & Associates on issues relating to stormwater management and erosion and sedimentation control. Mr. Healy is thus sued in his individual capacity for his tortious conduct in planning, designing, and consulting for the Salisbury Hill development.

23.    Defendant Rotti Construction Company, Inc. (hereinafter, "Rotti Construction"), is a corporation organized under the laws of Massachusetts, with a principal place of business at 46 Lancaster Street, West Boylston, MA, 01583. Rotti Construction is the builder of the Salisbury Hill site, including the site's systems of

stormwater management and erosion and sedimentation control. Rotti Construction also handles the day-to-day maintenance of Salisbury Hill's systems of stormwater management and erosion and sedimentation control.

24.     Defendant Walter R. Rotti, of West Boylston, MA, besides being an owner and President of Rotti Construction, is the individual who oversees construction at the Salisbury Hill site, including its systems of stormwater management and erosion and sedimentation control. Mr. Rotti is also the individual who handles the day-to-day maintenance of Salisbury Hill's systems of stormwater management and erosion and sedimentation control. Mt. Rotti is thus sued in his individual capacity for his tortious conduct in building and maintaining the Salisbury Hill site.

25.     Defendant Ecotec, Inc. (hereinafter, "Ecotec") is a corporation organized under the laws of Massachusetts, with a principal place of business at 102 Grove Street, Worcester, MA, 01605. Ecotec is the wetlands consulting firm that advises Bailin & Associates on how to avoid damaging neighboring wetlands, and on whether Bailin & Associates is avoiding such damage. Ecotec has also assisted in the engineering and management of Salisbury Hill's erosion and sedimentation control systems.

26.     Defendant Paul J. McManus, of Holden, MA, besides being an owner and President of Ecotec., Inc., is the individual wetlands consultant who advises Bailin & Associates on how to avoid doing damage to neighboring wetlands, and on whether Bailin & Associates is avoiding such damage. Mr. McManus also assists in the engineering and management of Salisbury Hill's erosion and sedimentation

control systems, and functions as Bailin & Associates' primary spokesperson before local, state, and federal wetlands protection agencies. Mr. McManus is sued in his individual capacity for his tortious conduct in designing and managing Salisbury Hill's erosion and sedimentation control systems, and in advising Bailin & Associates.

## STATUTORY AND REGULATORY FRAMEWORK

### Federal

27.     The objective of the CWA, 33 U.S.C. § 1251 et seq., is to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

28.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant by any person from a point source to waters of the United States unless the discharge is in compliance with various enumerated sections of the CWA—among them, Section 402 of the CWA, 33 U.S.C. § 1342.

29.     Under Section 402(p)(2)(B) of the CWA, 33 U.S.C. § 1342(p)(2)(B), dischargers of stormwater associated with industrial activity—that is, *inter alia*, construction activity including clearing, grading and excavating that disturbs five or more acres of land, *see* 40 C.F.R. § 122.26(b)(14)(x)—are required to obtain and adhere to the terms of a National Pollutant Discharge Elimination System (NPDES) permit. The same requirement is found at 40 C.F.R. § 122.26(c)(1), which mandates that dischargers of stormwater associated with industrial activity and small construction activity—the latter being activity that disturbs at least one and less than five acres of land—must apply for either an individual or general NPDES permit.

30.     The EPA has issued a NPDES General Permit for Storm Water Discharges from Construction Activities ("Construction General Permit," or "CGP") in 2003 and 2008. The 2003 CGP, under which the Salisbury Hill development appears to be covered—*see* paragraphs 76-77, *infra*—was issued by the EPA in July of 2003, and governs the construction activities of dischargers who between July 1, 2003 and July 1, 2008, inclusive, properly filed a Notice of Intent to be covered under the 2003 CGP. *See* 68 Fed. Reg. 39087 (July 1, 2003) (announcing issuance of 2003 CGP); 73 Fed. Reg. 40338 (July 14, 2008) (announcing issuance of 2008 CGP).

31.     The 2003 CGP, like the 2008 CGP, imposes various conditions on a permittee that are meant to reduce the discharge of polluted stormwater to waters of the United States.[1] Among these conditions is that the permittee prepare and follow a Storm Water Pollution Prevention Plan ("SWPPP"), which must clearly describe all pollution control measures (otherwise called Best Management Practices, or "BMPs") to be used in reducing polluted discharges from the site.

32.     The 2003 CGP, like the 2008 CGP, requires (at Part 9(A)(1)(a)(iv)) that a permittee in Massachusetts comply with the Massachusetts Wetlands Protection Act, M.G.L. c. 131, § 40, and any Order of Conditions issued by a city or town's Conservation Commission. This state and local law is thus incorporated into the 2003 CGP.

33.     Under Section 505 of the CWA, 33 U.S.C. § 1365, any person adversely affected by a NPDES permittee's violation of the terms of its permit may

---

[1] The 2003 CGP can be found at:
http://www.epa.gov/npdes/pubs/cgp2003_entirepermit.pdf

sue to enjoin such violation, and to impose civil penalties on the violator. A plaintiff who prevails or substantially prevails in such suit may be awarded costs of litigation, including reasonable attorney and expert witness fees. *See* 33 U.S.C. §§ 1365(a) (any "citizen" may sue to enforce a CWA "effluent standard or limitation"); 1365(f)(6) (defining "effluent standard or limitation" to include a NPDES permit or condition thereof); 1365(g) (defining "citizen" as a person or persons adversely affected by a CWA violation); 1365(d) (litigation costs awardable).  The maximum civil penalty assessable per CWA violation is $37,500, for each day that such violation persists. *See* Section 309(d) of the CWA, 33 U.S.C. § 1319(d) (re. civil penalties generally); 40 C.F.R. § 19.4 (adjusting civil penalty amount for inflation to $37,500 as of January 12, 2009).

## State

34.     The objectives of the Massachusetts Wetlands Protection Act ("WPA"), M.G.L. c. 131, § 40, are: (i) to protect the private or public water supply, (ii) to protect ground water, (iii) to provide flood control, (iv) to prevent storm damage, (v) to prevent pollution, (vi) to protect land containing shellfish, (vii) to protect wildlife habitat, and (viii) to protect the fisheries. *Id.*; 310 C.M.R. 10.01(2).

35.     The WPA prohibits, *inter alia*, the filling or alteration of land bordering or beneath a Massachusetts stream or pond, where such land is deemed by a city's Conservation Commission to be significant to any of the eight interests specified in paragraph 34 above, except in accordance with an Order of Conditions imposed by the Conservation Commission. M.G.L. c. 131, § 40.

36.     The WPA prohibits a person who has filled or altered land bordering or beneath a steam or pond in violation of the WPA from leaving in place such unauthorized fill, or failing to restore the altered land to its original condition, or failing to comply with any enforcement order issued by a Conservation Commission under the WPA. Any such failure of restoration or compliance constitutes a separate violation of the WPA, for each day that the failure or non-compliance persists. M.G.L.  c. 131, § 40.

37.     Any occupant or owner of land filled or altered in violation of the WPA may sue to enjoin such violation, and for any order necessary to remedy such violation, including an order to restore the affected land to its original condition. Additionally, the violator may be assessed a civil penalty of $25,000 for each of its separate violations. M.G.L. c. 131, § 40.

## Local

38.     The city of Worcester's Wetlands Protection Ordinance ("WPO") supplements, and shares the purposes of, the WPA. *See* WPO, § 1; Preface to Worcester's Wetlands Protection Regulations.[2] The Worcester Conservation Commission issues Orders of Conditions under the authority of both the WPO and the WPA.

## GENERAL ALLEGATIONS

39.     In the year 2000, defendant Bailin & Associates purchased seven contiguous tracts of land comprising approximately 121 acres in Worcester, MA, and

---

[2] Worcester's Wetlands Protection Ordinance and Regulations can be found at: http://www.worcesterma.gov/city-clerk/ordinances-regulations.

Holden, MA, from the trustees of The Higgins Real Estate Trust. With the exception of the house and grounds and auxiliary structures of the Higgins family home, the 121 acres were entirely forested and undeveloped. The 121 acres are bordered on their east by Salisbury Street, which runs from the center of Worcester in a northwesterly direction to the center of Holden.

40.     In 2002, Bailin & Associates received approval from the Worcester Planning Board to build the Salisbury Hill Condominium, a 280-unit development of town homes and apartments, on an 86.1-acre parcel of the land that Bailin & Associates had acquired from The Higgins Real Estate Trust in 2000. To date, Bailin & Associates has completed the building of between 70 and 80 of the planned 280 units. In 2010, Bailin & Associates received approval from the Worcester Planning Board to extend their permit to build for an additional five years.

41.     The 86.1-acre Salisbury Hill site is shown as Lot 2 on a plan drawn in 2002 by the defendant Thompson-Liston Associates, Inc., and recorded in the Worcester District Registry of Deeds in Plan Book 786, Plan 28. The parcel is particularly described in Exhibit A to the Master Deed of the Salisbury Hill Condominium, recorded in the Worcester District Registry of Deeds at Book 33936, Pages 71-74.

42.     The 86.1-acre Salisbury Hill site was, prior to construction, entirely forested and undeveloped. The site is located on a steep hill at the headwaters of the Blackstone River. The hill straddles two sub-watersheds of the Blackstone River watershed. Its eastern side is part of the Beaver Brook sub-watershed.

43.     The highest point on Salisbury Hill is 916 feet above sea level. The elevation drops rapidly from that point to the east, on its Beaver Brook side, reaching a low of approximately 720 feet above sea level. At the base of the Salisbury Hill site on its Beaver Brook side, running parallel to Salisbury Street, and located primarily on a separate 10.4-acre parcel of the former Higgins property owned by Bailin & Associates, are a large wetland, and an unnamed stream.

44.     To prevent damage to wetlands during construction, Bailin & Associates hired defendant Thompson-Liston Associates to design an erosion and sedimentation control system. Central to that system, which was designed by defendant Patrick Healy of Thompson-Liston, are two detention ponds on the eastern side of Salisbury Hill. These two detention ponds receive the stormwater that enters the stormwater catch basins on the eastern side of the hill. The primary purpose of the detention ponds is to slow the flow of stormwater runoff, so that it does not erode the hillside on its path to the wetlands along Salisbury Street.

45.     The larger of the two detention ponds on the eastern side of Salisbury Hill is on the western side of a street named Summerland Way. This detention pond has been meant to serve two purposes during development. In addition to adjusting the flow of water off of the hill, this detention pond has been meant to serve as a temporary settling basin for the sediments that are suspended in the stormwater that enters the detention pond.

46.     When the stormwater from the Summerland Way detention pond exits the pond, it travels eastward under Summerland Way through a large concrete duct. The duct emerges from the hillside beneath a row of houses on the eastern side of

15

Summerland Way, where it discharges to the wetland and unnamed stream at the base of Salisbury Hill.

47.    The unnamed stream at the base of Salisbury Hill is a perennial stream. It flows southward parallel to Salisbury Street. As it leaves Bailin & Associates' property, it empties into a small unnamed pond. The waters of this small pond flow southward under a street named Whisper Drive, into a larger unnamed pond of approximately one acre in size. This larger pond is Plaintiffs' pond, behind the home of Judith P. Vander Salm at 655 Salisbury Street in Worcester.

48.    The waters of Plaintiffs' pond flow over a dam at the southern part of the pond into a stream that converges with another stream just south of Plaintiffs' property. The convergence of the two streams marks the beginning of Beaver Brook. Beaver Brook flows southward through Worcester before flowing into the Middle River. The Middle River flows southward through Worcester before flowing into the Blackstone River. The Blackstone River flows southeastward from Worcester through Rhode Island and empties into the Seekonk River in Pawtucket, Rhode Island. The Seekonk River flows southward and empties into Providence Bay in Providence, Rhode Island.

49.    The wetlands and unnamed stream at the base of Salisbury Hill, the small pond to the north of Whisper Drive, Plaintiffs' pond, the stream that flows out of Plaintiffs' pond, Beaver Brook, the Middle River, the Blackstone River, and the Seekonk River are all "waters of the United States," as defined at 40 C.F.R. § 122.2, and are thus "navigable waters" within the meaning of Section 502(7) of the CWA, 33 U.S.C. § 1362(7).

50.     The concrete duct that discharges stormwater from Salisbury Hill's Summerland Way detention pond into the wetlands and unnamed stream at the base of Salisbury Hill is a "point source" as defined by Section 502(14) of the CWA, 33 U.S.C. 1362(14).

51.     The Salisbury Hill construction plan involves the clearing, grading, and excavating of 58.8 acres of land. Accordingly, the construction activity constitutes "industrial activity" within the meaning of Section 402(p)(2)(B) of the CWA, 33 U.S.C. § 1342(p)(2)(B), as defined at 40 C.F.R. § 122.26(b)(14)(x).

52.     Because Bailin & Associates planned to discharge stormwater associated with industrial activity from a point source to waters of the United States, it was required to obtain a NPDES permit, under Section 402(p) of the CWA, 33 U.S.C. § 1342(p). *See also* 40 C.F.R. § 122.26(c)(1).

53.     Bailin & Associates neither applied for nor obtained a NPDES permit prior to breaking ground on Salisbury Hill in 2003.

54.     Bailin & Associates neither applied for nor obtained a NPDES permit at any time until 2008.

55.     In 2002, the Worcester Conservation Commission issued an Order of Conditions for the Salisbury Hill development, because it deemed the wetlands on or near Salisbury Hill to be valuable to all of the interests of the Massachusetts Wetlands Protection Act. The Order of Conditions, which is appended hereto as Exhibit C, was issued under the authority of both the Wetlands Protection Act and the city of Worcester's Wetlands Protection Ordinance.

56.     No later than 2004, Bailin & Associates hired defendant Rotti Construction Company, Inc., to build the Salisbury Hill development, including its systems of stormwater management and erosion and sedimentation control. Rotti Construction, under the day-to-day management of defendant Walter R. Rotti, has since this time been the builder of the development, and the primary party implementing, inspecting and managing its systems of stormwater management and erosion and sedimentation control.

57.     Bailin & Associates broke ground on the Salisbury Hill site in late 2002 or early 2003. Since that time, and continuing to the present day, Defendants' construction activities have caused the discharge of large amounts of sediment-laden stormwater to the wetland and unnamed stream along Salisbury Street. This stormwater travels down the unnamed stream, into the small pond to the north of Whisper Drive, and then into Plaintiffs' pond at 655 Salisbury Street, where much of its suspended sediment settles.

58.     Defendants' recurring discharges of sediment-laden stormwater include such other pollutants as nitrogen and phosphorus.

59.     Defendants' design and construction of the Salisbury Hill site has radically altered the area's natural hydrologic regime. The volume and velocity of stormwater that runs off of the hill has dramatically increased, and the manner in which that runoff is concentrated and funneled—most of it, through the duct that discharges from the Summerland Way detention pond—creates an erosive waterfall on the hillside during heavy rains, thus mobilizing sediments in addition to those

directly generated by construction activities on the site. These mobilized sediments are likewise transported downstream and deposited in Plaintiffs' pond.

60.     Since Bailin & Associates broke ground on Salisbury Hill, and continuing to the present day, Defendants in their respective roles and capacities have failed to design, install and maintain erosion and sedimentation control systems that prevent sediment-laden discharges from the site.

61.     Since Bailin & Associates broke ground on Salisbury Hill, and continuing to the present day, Defendants in their respective roles and capacities have consistently failed to follow such practices in clearing, grading and excavating the Salisbury Hill site as would prevent or minimize the creation of sediment-laden runoff in the first place.

62.     Defendants' failures of erosion and sedimentation control have resulted in repeated enforcement action by local and federal wetlands protection authorities.

63.     On April 15, 2004, the Worcester Conservation Commission issued an enforcement order finding Bailin & Associates in violation of the Wetlands Protection Act. The Commission ordered Bailin & Associates to stop discharging sediment-laden stormwater, and to restore damaged wetlands, including Plaintiffs' pond, to their former condition.

64.     On July 19, 2007, the Worcester Conservation Commission issued an enforcement order finding Bailin & Associates in violation of the Wetlands Protection Act. The Commission ordered Bailin & Associates to stop discharging

sediment-laden stormwater, and to restore damaged wetlands, including Plaintiffs'

pond, to their former condition.

65.     By letter of April 2, 2008, in light of Bailin & Associates' continuing

discharges of sediment-laden stormwater, the Worcester Conservation Commission

ordered Bailin & Associates to immediately dredge its detention ponds, to clean its

stormwater catch basins, to stabilize areas of open soil, and to restore or replace its

ineffectual silt fences and hay bales.

66.     In 2008, the EPA issued an administrative complaint against Bailin &

Associates for its four-plus years of failing to apply for or obtain a NPDES permit.

Additionally, the EPA complained against Bailin & Associates for its failure to

adhere to various erosion and sedimentation control BMPs once it had obtained

NPDES coverage in May of 2008, and for its failure to keep a copy of its Storm

Water Pollution Prevention Plan (SWPPP) on site. Bailin & Associates paid a sum

to settle the EPA complaint in 2009.

67.     On June 16, 2011, in light of Bailin & Associates' continuing

discharges of sediment-laden stormwater, the Worcester Conservation Commission

issued an enforcement order finding Bailin & Associates in violation of the Wetlands

Protection Act. The Commission ordered Bailin & Associates to stabilize exposed

areas of the site.

68.     Defendants in their respective roles and capacities have consistently

failed to take or maintain those corrective measures ordered by the Worcester

Conservation Commission and the EPA. Defendants have failed to take any measure

to restore the wetlands and ponds that they have damaged, and have persisted in

neglecting those erosion and sedimentation control practices, such as maintenance of silt fences and timely stabilization of soil, that they have been ordered to stop neglecting.

69.     Plaintiffs have repeatedly demanded that Defendants stop their ongoing discharges of pollutants to Plaintiffs' pond. Defendants have responded, alternatively, by denying the existence of such discharges, by denying their frequency, or by downplaying their severity.

70.     Defendants have recently made explicit, in their communications with the Worcester Conservation Commission, their intention to continue discharging sediment to the wetlands and unnamed stream along Salisbury Street.

71.     Since no later than 2004, Bailin & Associates has been employing defendant Paul J. McManus of defendant Ecotec to evaluate Salisbury Hill's impact on the wetlands and ponds along Salisbury Street, and to address the fitness of its erosion and sedimentation control systems to avoid damaging these areas. After initially denying that Salisbury Hill was discharging sediment at all, Mr. McManus has consistently maintained that Salisbury Hill's discharges of sediment are harmless. Mr. McManus has advised Bailin & Associates to continue discharging sediment to the wetlands and unnamed stream along Salisbury Street.

72.     Defendants' eight years of polluted discharges have severely harmed Plaintiffs' pond, and continue to harm Plaintiffs' pond. The pond has become the settling basin for Salisbury's Hill sediment. Judith P. Vander Salm and her family are regularly made to look out from their home upon a pond full of muddy water. This condition can last for weeks after a significant storm. When the sediment finally

settles to the bottom of the pond, it adds to past deposits of Salisbury Hill's sediment in creating a fertile bed for the growth of aquatic plants and algae.

73.     Before Defendants' construction began, Plaintiffs' pond was clean and clear and without visible plants and algae. In the eight years since, in direct consequence of Salisbury Hill's sediment, and compounded by such fertilizing nutrients as are discharged from Salisbury Hill, the pond has become overgrown with plants and algae. These plants and algae now carpet the entire bottom of the pond. Over the course of the spring and summer, they bloom up in thick mats toward the pond's surface, with each summer's growth more profuse than the last. Plaintiffs' pond becomes a vast expanse of weeds and slimy algal masses, with each summer's growth more unsightly than the last.

74.     Plaintiffs' recreational uses of their pond are greatly diminished by Defendants' pollution and its effects, and are further diminished with each passing year. Swimming, fishing, canoeing, gardening along the pond's shore, and resting or reflecting at the pond's edge, all once treasured activities for members of Judith P. Vander Salm's family, are now repugnant, both because of the ubiquitous plants and algae and—during those times when Salisbury Hill's sediment is suspended in the water—because of the muddy opacity of the pond. The viewing of wildlife, formerly a great source of pleasure for Ms. Vander Salm and her family, has been made unpleasant, difficult, and in some cases, impossible—unpleasant, because of the repulsive plants and algae; difficult, because the plants, algae, and frequent turbidity of the pond now obscure much of the wildlife that formerly could be seen; and

impossible, to the degree that Salisbury Hill's pollution and its effects have extinguished or decimated populations of animals that formerly inhabited the pond.

## CLAIMS

## COUNT 1: CLEAN WATER ACT VIOLATIONS

(as to defendants Bailin & Associates and Peter T. Karassik, individually)

75.      Paragraphs 1-74 of this Complaint are hereby re-alleged and incorporated by reference herein.

76.      Plaintiffs are informed by EPA personnel, and on the basis of such information believe, that Bailin & Associates obtained NPDES coverage for its construction activities at Salisbury Hill in May of 2008. Because of an apparent mistake in the EPA's permittee database, Salisbury Hill does not show as being covered on the EPA's website, and does not have a NPDES permit number.

77.      Plaintiffs are informed by EPA personnel, and on the basis of such information believe, that Bailin & Associates is covered under the 2003 NPDES Construction General Permit (CGP). Plaintiffs, and Judith P. Vander Salm as prospective plaintiff, assumed in their Notice of Intent to Sue For Clean Water Act Violations, and Amendment thereto (attached hereto as Exhibits A and B, respectively) that Bailin & Associates was covered, if at all, under the 2008 CGP. The substantive provisions of the 2003 and 2008 CGPs are in relevant respects the same, but their provisions are numbered differently. Below, Defendants' permit violations are cited according to their numbers under the 2003 CGP.

78.      Each of Defendants' violations of the 2003 CGP, as set forth separately below, are violations for which both Bailin & Associates and Peter T.

23

Karassik are liable. Bailin & Associates is liable as the owner of the development and the holder of the NPDES permit. Mr. Karassik is liable as the person directly responsible for Salisbury Hill's compliance with the terms of its permit, according to its Storm Water Pollution Prevention Plan (SWPPP).

79.     Each of Defendants' violations of the 2003 CGP, as set forth separately below, is underscored during those times when Defendants are discharging sediment-laden stormwater. Between November of 2009 and the time of this Complaint—that is, the period for which Plaintiffs allege Clean Water Act violations[3]—substantial sediment-laden stormwater discharges have occurred, among other dates, during and after storms on November 14, 2009, October 6, 2010, April 17, 2011, June 1, 2011, and September 8, 2011.

80.     Defendants' Clean Water Act violations, as set forth below, are all either ongoing or, where intermittent, are virtually certain to recur, given Defendants' long history of violating the law.

<u>Defendants' Facial Violations of the 2003 CGP</u>

81.     Continuously since November 14, 2009, Defendants have been violating Part 3.6(A) of the 2003 CGP by failing to maintain Salisbury Hill's erosion and sedimentation control measures in effective operating condition, and by failing to repair them immediately where necessary. Such continuous failures of

---

[3] To emphasize: this is the period for which Plaintiffs allege Clean Water Act violations in this Complaint. The starting date of November 14, 2009, does not suggest that Defendants were in compliance before that date. As illustrated by the EPA's 2008 complaint, and Defendants' 2009 settlement of that complaint, Defendants were violating the Clean Water Act between 2003 and 2008.

The starting date of November 14, 2009, is also not to be taken to refer to any other Count of this Complaint. This starting date relates exclusively to Count 1.

maintenance and repair include, but are not limited to, a failure to maintain effective silt fencing below the Summerland Way detention pond outfall and a failure to maintain or repair defects in the Summerland Way detention pond's outlet structure, which has at no point been effective in preventing damaging velocities and volumes of stormwater discharge, nor in preventing the release of sediment-laden stormwater.

82.    Continuously since November 14, 2009, Defendants have been violating Part 3.13(F) of the 2003 CGP by failing to install velocity dissipation devices at the outfall of the Summerland Way detention pond that provide a non-erosive flow velocity to the discharged stormwater.

83.    Continuously since November 14, 2009, Defendants have been violating Part 3.13(B) of the 2003 CGP by failing to remove off-site accumulations of discharged sediment at a frequency sufficient to minimize off-site impacts. Among such accumulations of sediment that Defendants have continuously failed to remove are the accumulation at the bottom of the small pond to the north of Whisper Drive, and the accumulation at the bottom of Plaintiffs' pond.

84.    Since November 14, 2009, Defendants have violated Part 3.10 of the 2003 CGP, concerning site inspections and inspection reports, on numerous occasions, and in numerous ways. The number of such violations cannot currently be known by Plaintiffs, and must be ascertained through discovery. Plaintiffs at this time allege that Defendants:

> (a)  have, on dates including November 14, 2009, November 20, 2009, October 7, 2010, April 20, 2011, and June 2, 2011, violated Part 3.10(G)(7) and (8) of the 2003 CGP by failing to report that the silt

fences beneath the Summerland Way detention pond outfall need to be maintained, have failed to operate as designed, and in any event are inadequate as a sedimentation control device;

(b) have, on dates including October 6, 2010, and April 20, 2011, violated Part 3.10(G)(7) and (8) of the 2003 CGP by failing to report that the Summerland Way detention pond's outlet structure needs to be maintained, and has failed to operate as designed;

(c) have, on dates including April 20, 2011, and June 2, 2011, violated Part 3.10(G)(3) and (5) of the 2003 CGP by failing to report the occurrence and location of discharges of sediment from the site;

(d) have consistently violated Part 3.10(E) of the 2003 CGP by failing to look for evidence of, or the potential for, pollutants entering the site's stormwater conveyance system;

(e) have consistently violated Part 3.10(E) of the 2003 CGP by failing to observe and ensure that the site's erosion and sedimentation control systems work properly;

(f) have consistently violated Part 3.10(E) of the CGP by failing to inspect discharge locations to ascertain whether erosion control measures are effective in preventing significant impacts to waters of the United States; and,

(g)  have consistently violated Part 3.10(D) of the CGP by failing to

assign qualified personnel to conduct inspections.

85.    At various times since November 14, 2009, including June 14, 2011,

Defendants have violated Part 3.12(A) of the 2003 CGP by failing to keep a copy of

their SWPPP readily available on site. The number of days of this violation cannot

currently be known by Plaintiffs, and must be ascertained through discovery.

<u>Defendants' Violations of Local and State Law,</u>
<u>Incorporated as Clean Water Act Violations</u>
<u>at Part 9(A)(1)(a)(iv) of the 2003 CGP</u>

86.    Continuously since November 14, 2009, as underscored by discharges

of sediment-laden stormwater that have occurred on, among other dates, November

14, 2009, October 6, 2010, April 17, 2011, June 1, 2011, and September 8, 2011,

Defendants have failed to securely establish silt fences "so as to prevent any sediment

from seeping under, through or over them before, during and after construction," in

violation of Condition No. 21 of the Worcester Conservation Commission's Order of

Conditions for Salisbury Hill.

87.    Continuously since November 14, 2009, as underscored by discharges

of sediment-laden stormwater that have occurred on, among other dates, November

14, 2009, October 6, 2010, April 17, 2011, June 1, 2011, and September 8, 2011,

Defendants have failed to make "periodic inspections (particularly during rain or

snow melt) to assure continued effectiveness of [erosion and sediment controls]," in

violation of Condition No. 23 of the Worcester Conservation Commission's Order of

Conditions for Salisbury Hill.

88.     At various times since November 14, 2009, as underscored by discharges of sediment-laden stormwater that have occurred on, among other dates, November 14, 2009, October 6, 2010, April 17, 2011, June 1, 2011, and September 8, 2011, Defendants have engaged in construction-related activity on site notwithstanding unresolved defects in the operation of their stormwater management system. This is in violation of Condition No. 29(a) of the Worcester Conservation Commission's Order of Conditions for Salisbury Hill.

89.     Continuously since November 14, 2009, Defendants have failed to clean the Summerland Way detention pond of accumulated sediment, in violation of Condition No. 29(c) of the Worcester Conservation Commission's Order of Conditions for Salisbury Hill.

90.     Continuously since November 14, 2009, as underscored by discharges of sediment-laden stormwater that have occurred on, among other dates, November 14, 2009, October 6, 2010, April 17, 2011, June 1, 2011, and September 8, 2011, and as illustrated by the degradation of Plaintiffs' pond, Defendants have failed to monitor, maintain, and adjust all erosion and sediment controls throughout the duration of the project as required to prevent adverse impact to wetlands, in violation of Condition No. 30 of the Worcester Conservation Commission's Order of Conditions for Salisbury Hill.

91.     Continuously since November 14, 2009, as underscored by discharges of sediment-laden stormwater that have occurred on, among other dates, November 14, 2009, October 6, 2010, April 17, 2011, June 1, 2011, and September 8, 2011, and as illustrated by the degradation of Plaintiffs' pond, Defendants have failed to "make

sufficient provision to control any unexpected drainage and erosion conditions that may arise during construction that may create damage to wetlands areas, streams, brooks, and abutting or downstream properties," in violation of Condition No. 31 of the Worcester Conservation Commission's Order of Conditions for Salisbury Hill.

92.     At various times since November 14, 2009, as underscored when discharges of sediment-laden stormwater have occurred, Defendants have failed to re-vegetate disturbed land promptly after completion of grading, in violation of Condition No. 32 of the Worcester Conservation Commission's Order of Conditions for Salisbury Hill.

93.     By each of their violations of the Worcester Conservation Commission's Order of Conditions, Defendants have also violated the Massachusetts Wetlands Protection Act ("WPA"), M.G.L. c. 131, § 40, which requires that all work must be done in accordance with a Conservation Commission's Order of Conditions.

94.     Continuously since November 14, 2009, as before that date, Defendants have been violating the WPA by failing to comply with the Worcester Conservation Commission's enforcement orders of April 15, 2004, and July 19, 2007. *See* M.G.L. c. 131, § 40; paragraph 36, *supra*. In each of these enforcement orders, after discharging sediment to Plaintiffs' pond and the small pond to the north of Whisper Drive, Defendants were ordered to return the ponds to their original condition. Defendants have never removed any of their sediment from these ponds.

95.     Continuously since November 14, 2009, as before that date, irrespective of the Worcester Conservation Commission's explicit enforcement orders, Defendants have been violating the WPA by leaving their unlawfully

discharged sediment, whenever deposited, at the bottom of Plaintiffs' pond, and by failing to restore the altered bottom of Plaintiffs' pond to its original condition. *See* M.G.L. c. 131, § 40; paragraph 36, *supra*.

## COUNT 2:
## MASSACHUSETTS WETLANDS PROTECTION ACT VIOLATIONS

(as to defendant Bailin & Associates)

96.     Paragraphs 1-95 of this Complaint are hereby re-alleged and incorporated by reference herein.

97.     Defendant, as stated in paragraph 93, has violated the WPA by each of its violations of the Worcester Conservation Commission's Order of Conditions.

98.     Continuously for the two years prior to the filing of this Complaint, as before, Defendants have been violating the WPA by failing to comply with the Worcester Conservation Commission's enforcement orders of April 15, 2004, and July 19, 2007. *See* M.G.L. c. 131, § 40; paragraph 36, *supra*. In each of these enforcement orders, after discharging sediment to Plaintiffs' pond and the small pond to the north of Whisper Drive, Defendants were ordered to return the ponds to their original condition. Defendants have never removed any of their sediment from these ponds.

99.     Continuously for the two years prior to the filing of this Complaint, as before that date, irrespective of the Worcester Conservation Commission's explicit enforcement orders, Defendants have been violating the WPA by leaving their unlawfully discharged sediment, whenever deposited, at the bottom of Plaintiffs' pond, and by failing to restore the altered bottom of Plaintiffs' pond to its original condition. *See* M.G.L. c. 131, § 40; paragraph 36, *supra*.

## COUNT 3: NEGLIGENCE

(as to all defendants)

100.     Paragraphs 1-99 of this Complaint are hereby re-alleged and incorporated by reference herein.

101.     Defendants Bailin & Associates and the Salisbury Hill Condominium Trust, through its trustees, are liable for the acts of negligence described herein as the owners, respectively, of the Salisbury Hill development and the common areas of the Salisbury Hill Condominium. Bailin & Associates and the Salisbury Hill Condominium Trust are the parties for whom, and under whose control, all acts and omissions alleged in this Complaint, by whichever defendant parties, have been performed or omitted.

102.     Defendants Peter T. Karassik (individually), John L. MacKoul, (individually), Thompson-Liston Associates, Patrick J. Healy (individually), Rotti Construction, Walter R. Rotti (individually), Ecotec, and Paul J. McManus (individually), are each liable for their negligent acts and omissions, in their respective roles at Salisbury Hill, that damage and have damaged Plaintiffs.

103.     Under the common law of Massachusetts, negligence is the breach of a duty of care to another that proximately causes damage to that other.

104.     Defendants have a duty of care to Plaintiffs, whose pond is foreseeably impacted by stormwater discharges from Defendants' site.

105.     Defendants have breached, and continue to breach, their duty of care to Plaintiffs by failing to design, build, and maintain their site so as to avoid discharges of sediment and other pollutants to Plaintiffs' pond.

31

106.     Defendants' breach of their duty of care to Plaintiffs has caused and continues to cause the discharge of damaging sediment and another pollutants to Plaintiffs' pond. Defendants are thus liable to Plaintiffs in negligence for these damages.

## COUNT 4: CONTINUING TRESPASS

(as to all Defendants)

107.     Paragraphs 1-106 of this Complaint are hereby re-alleged and incorporated by reference herein.

108.     Defendants Bailin & Associates and the Salisbury Hill Condominium Trust, through its trustees, are liable for the trespasses described herein as the owners, respectively, of the Salisbury Hill development and the common areas of the Salisbury Hill Condominium. Bailin & Associates and the Salisbury Hill Condominium Trust are the parties for whom, and under whose control, all acts and omissions alleged in this Complaint, by whichever defendant parties, have been performed or omitted.

109.     Defendants Peter T. Karassik (individually), John L. MacKoul, (individually), Thompson-Liston Associates, Patrick J. Healy (individually), Rotti Construction, Walter R. Rotti (individually), Ecotec, and Paul J. McManus (individually), are each liable for their acts and omissions, in their respective roles at Salisbury Hill, that cause and have caused the trespasses described herein.

110.     Under the common law of Massachusetts, a trespass is an act of physical interference with a landowner's exclusive possession of his property.

32

111.    Defendants' recurring, negligent, and damaging discharges of sediment and other pollutants to Plaintiffs' pond have deprived Plaintiffs, and continue to deprive Plaintiffs, of the exclusive possession of their property, and constitute a continuing trespass.

112.    Defendants' recurring, intentional, and damaging discharges of sediment and other pollutants to Plaintiffs' pond have deprived Plaintiffs, and continue to deprive Plaintiffs, of the exclusive possession of their property, and constitute a continuing trespass.

113.    Defendants' accumulating deposits of damaging sediment and other pollutants in Plaintiffs' pond have deprived Plaintiffs, and continue to deprive Plaintiffs, of the exclusive possession of their property, and constitute a continuing trespass.

114.    Defendants' continuing failure to remove their damaging sediment from the bottom of Plaintiffs' pond has deprived Plaintiffs, and continues to deprive Plaintiffs, of the exclusive possession of their property, and constitutes a continuing trespass.

## COUNT 5: CONTINUING NUISANCE

(as to all defendants)

115.    Paragraphs 1-114 of this Complaint are hereby re-alleged and incorporated by reference herein.

116.    Defendants Bailin & Associates and the Salisbury Hill Condominium Trust, through its trustees, are liable for the acts of nuisance described herein as the owners, respectively, of the Salisbury Hill development and the common areas of the

Salisbury Hill Condominium. Bailin & Associates and the Salisbury Hill Condominium Trust are the parties for whom, and under whose control, all acts and omissions alleged in this Complaint, by whichever defendant parties, have been performed or omitted.

117.    Defendants Peter T. Karassik (individually), John L. MacKoul, (individually), Thompson-Liston Associates, Patrick J. Healy (individually), Rotti Construction, Walter R. Rotti (individually), Ecotec, and Paul J. McManus (individually), are each liable for their acts and omissions, in their respective roles at Salisbury Hill, that cause and have caused the nuisance described herein.

118.    Under the common law of Massachusetts, a private nuisance occurs when a property owner creates, permits, or maintains a condition or activity on his property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another.

119.    Defendants' recurring discharges of sediment and other pollutants to Plaintiffs' pond, and the effects thereof, have caused, and continue to cause, a substantial and unreasonable interference with Plaintiffs' aesthetic and recreational enjoyment of their pond, and constitute a continuing nuisance.

120.    Defendants' accumulating deposits of sediment and other pollutants in Plaintiffs' pond, and the effects thereof, have caused, and continue to cause, a substantial and unreasonable interference with Plaintiffs' aesthetic and recreational enjoyment of their pond, and constitute a continuing nuisance.

**<u>REQUEST FOR RELIEF</u>**

Plaintiffs respectfully request the following relief:

a.  A declaratory judgment that Defendants are and have been in violation of the Clean Water Act, in those respects alleged by Plaintiffs, and an injunction prohibiting the continuation of these violations.

b.  A declaratory judgment that Defendants are and have been in violation of the Massachusetts Wetlands Protection Act, in those respects alleged by Plaintiffs, and an injunction prohibiting the continuation of these violations.

c.  A declaratory judgment that Defendants are and have been trespassing on Plaintiffs' property, and an injunction prohibiting the continuation of these trespasses.

d.  A declaratory judgment that Defendants are and have been creating and maintaining a nuisance to Plaintiffs' property, and an injunction prohibiting the continuation of this nuisance.

e.  An order mandating that Defendants comply with all terms and conditions of their NPDES permit.

f.  An injunction prohibiting Defendants from discharging any sediment to the wetlands and unnamed stream at the base of Salisbury Hill.

g.  An order mandating that Defendants immediately report to the EPA, in writing, any discharge of visible sediment from Salisbury Hill, and any failure of any erosion or sedimentation control device to perform as designed; and further mandating that such report detail precisely the causes of such discharge or failure, and how such causes will be removed.

h. An order mandating that Defendants provide Plaintiffs with copies of the reports produced under paragraph (g) above, and copies of all inspection reports that they are required to produce under the terms of their SWPPP, within 30 days after such reports have been written.

i. An order mandating that Defendants re-evaluate, re-design and re-build their erosion and sedimentation control systems to ensure that erosive velocities and volumes of stormwater, such as now routinely occur, are no longer discharged from the site, whether before, during, or after construction activities.

j.  An order mandating that Defendants remove all of Salisbury Hill's accumulated sediment from receiving wetlands and waters, including Plaintiffs' pond.

k. An order mandating that Defendants restore all receiving waters to their condition prior to Salisbury Hill's pollution, including all such restoration as is necessary to restore wildlife populations extinguished or decimated by the effects of Defendants' pollution, and including all such restoration as is necessary to remove and prevent the algae and plant growth caused by Defendants' pollution.

l. An order that Defendants pay civil penalties, pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), as adjusted at 40 C.F.R. § 19.4, for their violations of the CWA, both as specifically alleged herein and as will arise or continue after the time of this Complaint, in the amount of $37,500 per

day for each day of each violation alleged, with continuous violations constituting a separate violation for each day that they persist.

m. An order that Defendants pay civil penalties, pursuant to the Massachusetts Wetlands Protection Act, M.G.L. c 131, § 40, for their violations of the WPA, both as specifically alleged herein and as will arise or continue after the time of this Complaint, in the amount of $25,000 per day for each day of each violation alleged, with continuous violations constituting a separate violation for each day that they persist.

n.  An award of costs of this litigation to Plaintiffs, including attorney fees and expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d);

o. An award of damages to Plaintiffs sufficient to restore Plaintiffs' pond to its condition before Defendants trespassed upon Plaintiffs' property, and before Defendants created a nuisance to Plaintiffs;

p. An award of damages to Plaintiffs sufficient to pay for such future treatment of Plaintiffs' pond as will be necessary to suppress any residual effects of Defendants' pollution, so that the pond, once restored, can be maintained in that condition;

q. An award of damages to Plaintiffs sufficient to compensate them for their diminished use and enjoyment of their property due to Defendants' pollution, from the time such diminution began to the time that Plaintiffs' property is restored; and,

r. Such other relief as this Court deems just and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues so triable.

Respectfully Submitted,

**/s/ James P. Vander Salm**
James P. Vander Salm, Esq.
Attorney for Plaintiffs
P.O. Box 700
Holden, MA  01520
Tel. (774) 239-3339
jpvandersalm@gmail.com
BBO# 663320

Dated: September 22, 2011