## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JAMES P. VANDER SALM and JESSICA T. VANDER SALM, as Trustees of the Judith P. Vander Salm Irrevocable Trust, and JUDITH P. VANDER SALM <br><br> Plaintiffs, <br><br> v. <br><br> BAILIN & ASSIOCIATES, INC., the SALISBURY HILL CONDOMINIUM TRUST, PETER T. KARASSIK, individually, JOHN L. MACKOUL, individually, THOMPSON-LISTON ASSOCIATES, INC., PATRICK J. HEALY, individually, ROTTI CONSTRUCTION COMPANY, INC., WALTER J. ROTTI, individually, ECOTEC INC., and PAUL J. MCMANUS, individually, <br><br> Defendants. | CIVIL ACTION <br> NO. 11-40180-TSH |

## MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Docket No. 161) AND PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGEMENT (Docket No. 184)
### March 18, 2014

HILLMAN, D.J.

### Introduction

James P. Vander Salm and Jessica T. Vander Salm, as Trustees of the Judith P. Vander Salm Irrevocable Trust (the "Vander Salm Trust"), and Judith P. Vander Salm (collectively "Plaintiffs") filed a Complaint against Bailin & Associates, Inc. ("Bailin"), Peter T. Karassik ("Karassik"), John L. MacKoul ("MacKoul"), Thompson-Liston Associates, Inc. ("TLA"),

1

Patrick J. Healy ("Healy"), Rotti Construction Company ("RCC") and Walter R. Rotti ("Rotti") (collectively "Defendants"), in addition to other defendants not involved in the motions addressed in this memorandum. Plaintiffs bring claims for violations of the Clean Water Act ("CWA") against Bailin and Karassik (Count I), violations of the Massachusetts Wetlands Protection Act ("WPA") against Bailin (Count II), negligence against all Defendants (Count III), gross negligence against Bailin, Karassik, and MacKoul (Count IV), continuing trespass against all Defendants (Count V), continuing nuisance against all Defendants (Count VI), and unjust enrichment against MacKoul (Count VII). Defendants have moved for summary judgment on all counts against them in Defendants' Motion for Summary Judgment (Docket No. 161). Plaintiffs have moved for summary judgment on Count I only in Plaintiffs' Motion for Partial Summary Judgment (Docket No. 184). This Memorandum of Decision addresses both motions. For the following reasons, Defendants' motion is granted in part and denied in part, and the Plaintiffs' motion is denied.

## **Background**

This case involves a pond (the "Pond") located south of Whisper Drive, behind and partially on property owned by the Vander Salm Trust at 655 Salisbury Street Worcester, Massachusetts (the "Vander Salm Property"). Plaintiffs claim that Defendants are responsible for releases of silt/sediment into stormwater runoff that migrates to the Pond, and that this silt or sediment has caused the growth of choking algae and weeds in the Pond.

Judith P. Vander Salm is the sole resident of the Vander Salm Property. She acquired it in 1981 and conveyed it to the Vander Salm Trust in 2011. A portion of the Pond is on that land and Plaintiffs also hold an easement for recreational use of the entire Pond. They also have an easement to maintain the dam that controls the Pond's water level, and an easement to garden on

certain parts of the Pond's perimeter. The Pond is fed by a stream that first leads to a pond north of Whisper Drive (the "North Pond") and connects to the Pond by a culvert under Whisper Drive. Plaintiffs claim that the discharge of sediment and other pollutants into the Pond has greatly diminished Plaintiffs' recreational uses of the Pond.

In 2000, Bailin purchased approximately 86 acres of land to the west of Salisbury Street located at 757 Salisbury Street (the "Salisbury Hill Property"). Karassik is one of Bailin's owners and its president. Karassik coordinated financing efforts for the construction of a Continuing Care Retirement Community ("CCRC") at the Salisbury Hill Property. MacKoul is also an owner of Bailin and served as the Project Manager for most of the construction of the CCRC.

In 2001, Bailin hired TLA to perform design engineer services for the development of the Salisbury Hill Property, including designing an erosion control program and storm water management system. Healy, a Massachusetts licensed Professional Engineer and TLA employee, served as project manager for the design of the Salisbury Hill Property. TLA filed a Notice of Intent to develop the Salisbury Hill Property with the Worcester Conservation Commission ("WCC"). The Notice included site plans that, in part, presented details regarding sediment and erosion control. In October 2001, Judith P. Vander Salm sent a letter to Healy expressing her concern about runoff into the Pond. She stated that she was considering filing a lawsuit against the project. On February 6, 2002, the Worcester Planning Board granted a Special Permit to Bailin for the construction of the CCRC. In March 2002, the WCC issued an Order of Conditions for the development, incorporating by reference TLA's submitted plans. The WCC extended this order in three year increments; it is currently in place through March 2014.

TLA prepared a Drainage Report for the site in September 2001. This report and the stormwater management system plans were both revised in February 2005. The site is divided

into two watersheds, one on the eastern side and the other on the western side. In the eastern watershed, stormwater runoff flows east towards a wetland parallel to Salisbury Street. Stormwater runoff is collected and treated, and flow is controlled through the use of detention basins; the detention basin in the eastern watershed was designed by TLA and is identified as "Pond 62." Pond 62 was designed to modulate the peak rate of flow leaving the site. Water is discharged from Pond 62 through an outlet structure. Water leaving the outlet structure flows through a culvert under Summerland Way and is discharged to an outfall point on the easterly side of the Salisbury Hill. Water at the outfall point flows through a rip-rap channel towards a wetland area. Silt fences, hay bales, and a flocculant have been used to as temporary measures to control sedimentation at the outfall point. Flow from the wetland area travels southerly in a stream parallel to Salisbury Street that flows into the North Pond. Pond 62 was supposed to function as a temporary settling basin until completion of site construction and was intended to be outfitted with a temporary riser outlet. In 2009, Rotti installed a permanent outlet structure in Pond 62.

Bailin hired RCC and its owner, Rotti, to perform certain site work on a time and materials basis. Rotti performed various day-to-day maintenance and monitoring activities for Bailin, including the repair of silt fences, replacement of hay bales and the completion of monitoring inspection reports under the CCRC's Stormwater Pollution Prevention Plan ("SWPPP").

Judith P. Vander Salm was aware of the alleged sedimentation problems no later than 2004. In 2005, she observed the pond would turn brown after a heavy rain. In 2006, she first observed the growth of algae, which became obvious in 2007 or 2008. In May 2008, James P.

Vander Salm sent Bailin a Notice of Intent to Sue, noting that the Pond had become overgrown with various kinds of algae.

Plaintiffs' expert witness, Dr. Kenneth Wagner, has opined that sediment was released from the CCRC site and settled in the Pond, resulting in the eutrophication and growth of weed and algae. Defendants contend that Plaintiffs' expert cannot identify how much, if any, of the sediment in the Pond originated from the CCRC, and that studies performed in the 1980's found the Pond was already eutrophic and contained a layer of sediment, root, and plant matter.

Additional facts are included in the relevant discussion where necessary.

## Discussion

*Standard of Review*

Summary judgment is appropriate when "there is no genuine issue as to any material fact" and thus "the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" when the evidence is such that a reasonable fact-finder could resolve the point in favor of the non-moving party, and a fact is "material" when it might affect the outcome of the suit under the applicable law. *Morris v. Gov't Dev. Bank*, 27 F.3d 746, 748 (1st Cir.1994). The moving party is responsible for "identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1968). It can meet its burden either by "offering evidence to disprove an element of the plaintiff's case or by demonstrating an 'absence of evidence to support the non-moving party's case.'" *Rakes v. U.S.*, 352 F. Supp. 2d 47, 52 (D. Mass. 2005) (quoting *Celotex*, 477 U.S. at 4). The non-moving party bears the burden of placing at least one material fact into dispute after the moving party shows the absence of any disputed material fact. *Mendes v. Medtronic, Inc.*, 18 F.3d 13, 15 (1st Cir.1994) (discussing *Celotex*, 477 U.S. at 325). When ruling on a motion for

summary judgment, the court must construe the facts in the light most favorable to the non-moving party. *Benoit v. Tech. Mfg. Corp*., 331 F.3d 166, 173 (1st Cir. 2003).

*Violations of the CWA*

Plaintiffs and defendants Bailin and Karassik both seek summary judgment on Count I, which alleges violations of the CWA, specifically that these defendants' deficient design, construction, and maintenance of stormwater management and erosion and sedimentation control systems at the Salisbury Hill Property resulted in the regular discharge of polluted stormwater to waters of the United States. For Plaintiffs to succeed on their claim under the CWA, they must show that the CWA applies, that Plaintiffs have standing to bring the CWA claim, and that Bailin and Karassik both violated the CWA and may be held liable.

Bailin and Karassik first argue that the CWA does not have jurisdiction over the stream that feeds the Pond, or that is a question of fact. Plaintiffs argue that Bailin and Karassik are estopped from disputing CWA jurisdiction and, even if they were not, the CWA does apply to the stream. Plaintiffs' estoppels argument is based on a Consent Agreement and Final Order ("CAFO") Defendants signed in 2009 to settled an EPA complaint against Bailin. In the CAFO, Karassik stipulated that the EPA had jurisdiction over the subject matter alleged in the Complaint. The CAFO also stated that "the Provisions of this CAFO shall be binding upon Respondent and their successors or assigns." Collateral estoppel "attaches only when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Arizona v. California*, 530 U.S. 392, 414 (2000) (internal quotations omitted). Collateral estoppel generally does not apply to settlements and consent judgments, as nothing was actually litigated. *Id*. at 414; *see also Uzdavines v. Weeks Marine, Inc*., 418 F.3d 138, 146 (2d Cir. 2005) ("Most courts have held that a fact established in

prior litigation by stipulation, rather than by judicial resolution, has not been 'actually litigated'"). There is an exception to this general rule when the party clearly intend a stipulation to be binding in future litigation. *Uzdavines*, 418 F.3d at 146; *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 (1st Cir. 1999) ("Consent judgments may be given collateral estoppel effect if the parties clearly intend issues to be settled for the purposes of subsequent litigation between them"). Here, there is no evidence from either the language of the agreement nor any attendant circumstances suggesting the parties intended the stipulation to be binding in a subsequent private action. The mere fact that Karassik stipulated to jurisdiction for the specific matter alleged in the complaint, and that the CAFO made a general statement that the provisions of the CAFO were binding, does not provide enough evidence to show the parties clearly intended that Karassik and Bailin would be estopped from challenging CWA jurisdiction in subsequent litigation, nor that the parties even contemplated subsequent litigation. *Red Lake Band v. U. S.*, 607 F.2d 930, 934 (Ct. Cl. 1979) (an issue is not 'actually litigated' for purposes of collateral estoppel unless the parties to the stipulation manifest an intent to be bound in a subsequent action….Moreover, an intention to be so bound should not be readily inferred."). Karassik and Bailin are, therefore, not estopped from challenging CWA jurisdiction in this matter.

The CWA makes unlawful "the discharge of any pollutant," which is defined to include "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1311(a), § 1362(12). "Navigable waters" are defined as "the waters of the United States, including the territorial seas." 33 U.S.C. §1362(7). The Supreme Court has considered the extent to which tributaries to interstate waters are considered "navigable waters" to which the CWA applies. *Rapanos v. United States*, 547 U.S. 715 (U.S. 2006). Under the *Rapanos* plurality's test, "relatively permanent, standing or flowing bodies of water" which are tributary to interstate

waters are "waters of the United States," whereas "ordinarily dry channels through which water occasionally or intermittently flows" are not, irrespective of their contribution to interstate waters. *Id*. at 732-33. In a concurring opinion, Justice Kennedy established an alternative formulation, whereby waters must possess a significant nexus with the "chemical, physical, and biological integrity" of navigable-in-fact waters to fall under CWA jurisdiction. *Id*. at 780. (Kennedy, J., concurring). The First Circuit has held that either of these two tests may be employed to establish CWA jurisdiction. *United States v. Johnson*, 467 F.3d 56, 64 (1st Cir. 2006). While Plaintiffs contend that CWA jurisdiction applies under either test, they, acknowledging that the test set forth by Justice Kennedy is highly factual and thus less conducive to summary judgment, only argue here that the CWA applies based on the plurality's test.

Defendants argue that the stream in question does not qualify for CWA jurisdiction under the *Rapanos* plurality's test, noting that McManus, in a memorandum, called the stream "intermittent." Healy, in his WPA Notice of Intent for Salisbury Hill, represents that the development does not abut a river within the meaning of the WPA regulations, 310 CMR 10.58, showing he considered the stream to be intermittent.[1] Moreover, Plaintiffs' expert, Dr. Kenneth Wagner, testified that he did not believe the stream always flowed. Plaintiffs contend that the stream does meet the plurality tests, citing James Vander Salm's testimony that he has never seen

---

[1] 310 CMR 10.58(2)(a)1 defines rivers in the following way:

> A river is any natural flowing body of water that empties to any ocean, lake, pond, or other river and which flows throughout the year. Rivers include streams (see 310 CMR 10.04: Stream) that are perennial because surface water flows within them throughout the year. Intermittent streams are not rivers as defined herein because surface water does not flow within them throughout the year. When surface water is not flowing within an intermittent stream, it may remain in isolated pools or it may be absent. When surface water is present in contiguous and connected pool/riffle systems, it shall be determined to be flowing. Rivers begin at the point an intermittent stream becomes perennial or at the point a perennial stream flows from a spring, pond, or lake. Downstream of the first point of perennial flow, a stream normally remains a river except where interrupted by a lake or pond. Upstream of the first point of perennial flow, a stream is normally intermittent.

the stream dry in over thirty years, a picture taken during a relatively dry month showing water in the stream, and a memorandum by McManus stating he tested the turbidity of the stream on October 16, 2007, after it had not rained for four days. Defendants respond to Plaintiffs' evidence by noting that James Vander Salm had not consistently observed the stream, that the photograph was taken after three days of rain, and that the turbidity testing was done after a recent storm. Based on the conflicting evidence, and lack of more concrete data[2] this Court finds there is a genuine issue of fact as to whether the stream falls under CWA jurisdiction, and thus whether Defendants are liable for CWA violations. As such, Plaintiffs' summary judgment motion must be denied. *See, e.g., Benjamin v. Douglas Ridge Rifle Club*, 673 F. Supp. 2d 1210, 1217 (D. Or. 2009) (finding a genuine issue of fact remained as to a CWA jurisdiction over a creek, and summary judgment was therefore inappropriate, where declarations stated the creek had never run dry and the creek was listed as a salmon habitat).

Defendants may still be granted summary judgment on the CWA claim if, as they argue, Plaintiffs lack standing to bring the claim. To satisfy Article III's standing requirement, a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that the injury is fairly traceable to the challenged action of the defendant; and 3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S.

---

[2] For example, in cases where courts have found CWA jurisdiction, evidence included the body of water's ordinary high water mark, a defined bed or channel, or the presence of indicative organisms. *See, e.g. Deerfield Plantation Phase II-B Prop. Owners Ass'n v. United States Army Corps of Eng'rs, 501 Fed. Appx. 268, 271* (4th Cir. 2012) (upholding District Court's decision of granting summary judgment finding jurisdiction based on analysis including evidence of a firm sandy bottom with a clearly-defined channel free of vegetation, a clearly-defined ordinary high water mark, groundwater influx, and sinuosity); *United States v. Donovan, 661 F.3d 174* (3d Cir. 2011) (affirming summary judgment finding jurisdiction based on expert reports regarding the degree of soil saturation, buttressing of tree trunks, ordinary high water mark and the presence of indicative organisms in the wetlands and channels); *United States v. Vierstra*, 803 F. Supp. 2d 1166, 1170 (D. Idaho 2011) *aff'd*, 492 F. App'x 738 (9th Cir. 2012) (finding allegations supported CWA jurisdiction based on evidence of ordinary high water mark and defined bed and bank). No such evidence is on the record in this case.

555, 560–561, 112 S.Ct. 2130 (1992). Defendants argue that Plaintiffs have failed to put forward evidence showing the conduct of the Defendants was the cause of any adverse condition in the Pond.[3] Plaintiffs contend that the record contains sufficient evidence to create a question of fact regarding causation, specifically pointing to videos that show sediment being discharged from the Salisbury Hill Property and flowing down to the Pond, and the brown condition of the Pond after such events. Moreover, James P. Vander Salm has testified that he watched silt-laden stormwater being discharged from Salisbury Hill, flowing into the stream that feed the Pond, and turning the Pond brown with suspended silt for days; Judith P. Vander Salm has made a similar observation as well. In addition, Plaintiffs' expert has opined that the weed and algae growth in the Pond was caused by alien sediment. Plaintiffs also point to two EPA actions and four Conservative Commission enforcement orders or admonitions regarding the failures of erosion and sediment control. Together, this evidence creates an issue of fact as to whether Defendants caused any adverse condition of the Pond, and Plaintiffs do not, as a matter of law, lack Article III standing. Summary judgment will not enter for either party on this claim.

*Violations of the WPA*

In Count II of their Amended Complaint, Plaintiffs allege that Bailin is in violation of the WPA, M.G.L. c. 131 §40. Defendants argue they are entitled to summary judgment on this claim because the WPA does not provide a private right of action against a violator of the WPA. M.G.L. c. 131 §40 provides in relevant part that:

> Any court having equity jurisdiction may restrain a violation of this section and enter such orders as it deems necessary to remedy such violation, upon the petition of the attorney general, the commissioner, a city or town, an owner or occupant of property which may be affected by said removal, filling, dredging or

---

[3] Defendants also argue, in response to Plaintiffs' motion for partial summary judgment, that there is a material fact dispute as to whether the Plaintiffs have standing. However, as the Court has already determined Plaintiff's motion for partial summary judgment will be denied, those arguments need not be reached.

> altering, or ten residents of the commonwealth under the provisions of section
> seven A of chapter two hundred and fourteen.

While this language gives an effected owner or occupant the right to petition the court for injunctive relief, the case law is clear that it does not create a private right of action against an alleged violator of the WPA. *Breneman v. U.S. ex rel. F.A.A.*, 2003 WL 22203684 (D. Mass. 2003) *aff'd*, 381 F.3d 33 (1st Cir. 2004) ("If they are alleging a violation of Mass. Gen. Laws ch. 131, § 40, they, as private parties, cannot sue."); *Christoffels v. Alton Properties, Inc.*, 362 Mass. 862, 285 N.E.2d 453, 454 (1972) ("the [WPA] protects only the public interest and confers no enforceable rights on the plaintiffs"); *Woods v. Brimm*, 2010 WL 4071052 (Mass. Super. 2010) ("the WPA provides no private right of action to enforce conditions issued by state or local agencies under the WPA"). This Court disagrees with Plaintiffs' contention that these cases were wrongly decided; though the language M.G.L. c. 131 §40, reproduced in part above, was amended in 1972 after *Christoffels*, it was not amended to add language granting private citizens the right to bring suit for penalties or damages. As the cases decided after the amendment suggest the holding in *Christoffels* is unaffected by the amended language. Plaintiffs are not entitled to bring a claim against Bailin for violating the WPA, and Bailin is entitled to summary judgment on Count II.

*Negligence and Gross Negligence*

Counts III and IV of Plaintiffs' Amended Complaint are for negligence against all Defendants and gross negligence against Bailin, Karassik, and MacKoul, respectively. Defendants have moved for summary judgment on both counts, arguing that any negligence claim is barred by the statute of limitations. Plaintiffs allege that Defendants in their respective roles at the Salisbury Hill Property failed to design, build, and maintain effective systems of

erosion and sediment control, and as a result sediment was discharged into the Pond during and after storms.

Tort claims in Massachusetts are subject to a three-year statute of limitations. M.G.L. c. 260 § 2A. ("Except as otherwise provided, actions of tort…shall be commenced only within three years next after the cause of action accrues.). A cause of action for negligence accrues when there is both the existence of negligence and some harm causally connected to the negligence. *John Beaudette, Inc. v. Sentry Ins. A Mut. Co*., 94 F. Supp. 2d 77, 105 (D. Mass. 1999). A plaintiff need not know the full extent of the harm for the limitations period to accrue, rather, "it is sufficient if the plaintiff knows or reasonably should know that it has sustained appreciable harm as a result of a defendant's negligence." *Id.* at 105-6 (internal quotations omitted); *Massachusetts Electric Company v. Fletcher, Tilton & Whipple, P.C.*, 394 Mass. 265, 475 N.E.2d 390, 391 ("cause of action accrues when some harm has occurred even though the full extent and nature of that harm has not been and cannot be established immediately"). "When a defendant files a motion contending that plaintiff's claims are time-barred (as here), the plaintiff bears the burden of pointing to facts of record that would justify a factfinder in concluding that the suit is timely." *Church v. Gen. Elec. Co.,* 1997 WL 129381, *4 (D. Mass. 1997)

Any tolling of actions in Massachusetts under the continuing tort doctrine is limited to claims of nuisance and trespass. *John Beaudette, Inc.*, 94 F.Supp. 2d at 107 (finding defendant's reliance on continuing tort theory as mean to toll the negligent duty to defend unavailing as "Massachusetts courts limit this theory to actions in nuisance and trespass"); *see White's Farm Dairy, Inc. v. De Laval Separator Company*, 433 F.2d 63, 67 (1st Cir.1970) (Massachusetts confines continuing tort theory "to instances of nuisance and trespass"); *Church v. Gen. Elec.*

*Co.*, 138 F. Supp. 2d 169, 174 (D. Mass. 2001) (holding that negligence actions are not subject to the continuing tort exception to the statute of limitations). Indeed, *Church* explains that it is "[t]he long-recognized concept of continuing nuisance or trespass" which "allows a plaintiff whose claim otherwise would not be timely to sue where his or her property rights are invaded from time to time because of repeated or recurring wrongs," rather than a theory of continuing negligence. 138 F. Supp. 2d at 173-74.

Here, Plaintiffs were aware of the project before construction in 2001, expressed their concerns that stormwater from the property was carrying sediment into the Pond in 2005, observed algae in the Pond in 2006, and have said the presence of algae was very obvious by 2007 or 2008. In May 2008, James Vander Salm sent Bailin a Notice of Intent to Sue, noting that the Pond had become overgrown with various kinds of algae. However, Plaintiffs did not bring a suit until more than three years later on September 22, 2011. In this situation, where Plaintiff knew of the alleged harm and cause, though perhaps not the full extent of the harm, as early as 2005 and certainly no later than May 2008, neglecting to file a claim for negligence until September 2011 puts that claim outside the statute of limitations. Massachusetts provides a means for Plaintiffs who allege suffering a continuing harm such as the one in this case through theories of continuing nuisance or trespass, not through tolling the limitations period for negligence. Therefore, summary judgment is granted in favor of all applicable Defendants on Counts III and IV.

*Continuing Trespass*

Count V of Plaintiffs' Amended Complaint alleges continuing trespass and claims each Defendant is liable for its part in causing repeated discharges of sediment into the Pond. Trespass requires an affirmative act that results in the invasion of another's land. *United Elec. Light Co. v.*

*Deliso Const. Co*., 315 Mass. 313, 318, 52 N.E.2d 553, 556 (1943). As discussed above, Massachusetts law recognizes claims of continuing trespass in situations involving repeated physical invasion of another's property. *See, e.g., Sixty-Eight Devonshire, Inc. v. Shapiro*, 348 Mass. 177, 183-184 (1964) (discharge of water from defendant's downspout onto plaintiff's building constituted continuing trespass). Trespass does not require negligence; any person who "sets in motion a force which, in the usual course of events, will damage the property of another is guilty of a trespass on such property." *Sheppard Envelope Co. v. Arcade Malleable Iron Co*., 335 Mass. 180, 187, 138 N.E.2d 777, 782 (1956) (noting that such action can be done "negligently or otherwise").

Defendants first argue that summary judgment should be granted in favor of TLA and Healy because Plaintiff has failed to proffer expert testimony regarding the standard of care for designing stormwater systems, the manner in which this standard was breached, or that such a breach caused any damages. However, as Plaintiffs need not show negligence to prove trespass, such expert testimony regarding duty and breach is unnecessary.

Defendants next argue that TLA, Healy, RCC, and Rotti cannot be held liable for trespass because they did not contribute to the discharges: TLA and Healy were the design engineers while RCC and Rotti installed certain components of the stormwater system and performed maintenance on the system. Defendants claim that because these defendants did not own or control the site, they cannot be held liable. Ownership or control, however, is not necessary for trespass liability, nor can Defendants point to any case law that suggests it is. For example, in *United Electric Light Co*., the Court found the defendant, a construction company working on a site as a contractor, could be liable for trespass. 315 Mass. at 313-15, 318-19. Each of the Defendants were, in some way, responsible for the creation and maintenance of the stormwater

systems which Plaintiffs claim damaged their property; as such, each could be liable for setting in motion the force which allegedly damaged Plaintiffs' property. *Sheppard Envelope Co*., 335 Mass. at 187.

Finally, Defendants claim Plaintiffs cannot show a trespass was committed because they cannot prove any sediment in the Pond originated from the Salisbury Hill Property. The Court has already addressed this argument above in its discussion of the CWA claim, finding that the record contains sufficient evidence to create a question of fact on this issue. Summary judgment on Count V is, therefore, denied.

*Continuing Nuisance*

Count VI alleges that each Defendant is liable in nuisance for its part in creating, maintaining, and permitting the deficient erosion and sediment controls at Salisbury Hill, which resulted in damaging discharges of sediment to the Pond. "A private nuisance is actionable when a property owner creates, permits, or maintains a condition or activity on [its] property that causes a substantial and unreasonable interference with the use and enjoyment of the property of another." *Taygeta Corp. v. Varian Associates, Inc*., 436 Mass. 217, 231, 763 N.E.2d 1053, 1064 (2002) (internal quotations omitted). Evidence of negligence is not required to show continuing nuisance. *Hakkila v. Old Colony Broken Stone & Concrete Co*., 264 Mass. 447, 452, 162 N.E. 895, 896 (1928) ("The one who maintains a private nuisance is liable to those suffering injury, without evidence of negligence on his part."); *United Elec. Light Co*., 315 Mass. at 320 ("A nuisance might exist in the absence of negligence.").

Defendants make the same three arguments for summary judgment on the nuisance claim as they do on the trespass claim. First, that summary judgment should be granted in favor of TLA and Healy because Plaintiff has failed to proffer expert testimony showing these defendants

breached their duty of care. Again, as negligence is not required for nuisance, neither is expert testimony regarding these professionals' duty of care or breach of that duty. Defendants also argue that Plaintiffs have failed to show that Defendants have caused a nuisance. As the Court has already found, there is enough evidence on the record to create a question of fact as to whether the release of sediment from Salisbury Hill caused damage to the Pond, which could certainly be considered a substantial and unreasonable interference with the use and enjoyment of Plaintiffs' property.

Finally, Defendants argue that the nuisance claims against the non-owner defendants fail because these defendants did not own or control the Salisbury Hill Property. "In order to be liable in nuisance…it is not necessary for an individual to own the property on which the objectionable condition is maintained. Rather, liability for damage…turns upon whether a defendant [controls the property], either through ownership or otherwise." *Belanger v. Com.*, 41 Mass. App. Ct. 668, 670, 673 N.E.2d 56, 58 (1996) overruled on other grounds by *Morrissey v. New England Deaconess Ass'n--Abundant Life Communities, Inc.*, 458 Mass. 580, 940 N.E.2d 391 (2010) (internal quotations omitted). In *United Electric Light Co.*, the Court found the defendant, a construction company working on a site as a contractor, could be liable for nuisance, as it was "lawfully occupying  a space….and was responsible for the proper and reasonable use of locus" so as not to cause damage to an area owned or occupied by another. 315 Mass. at 313-15, 320-21. Plaintiffs argue that RCC and Rotti had sufficient control of the instrumentality to be liable for nuisance because they were responsible for directly maintaining the site's erosion and sediment controls on a day to day basis. This is enough to at least create a question of fact. Plaintiffs also claim that TLA and Healy had control over the erosion and sediment controls because, as the design engineers for the project, they provided input to Bailin

regarding the stormwater management and erosion control systems, including occasional site visits. While the record shows TLA and Healy acted as consultants and made suggestions regarding the maintenance of the systems there is nothing to show they had any real control over the site. Thus while summary judgment is denied on the nuisance claim as to Bailin, Karassik, MacKoul, Rotti, and RCC, it is granted in favor of TLA and Healy.

*Unjust Enrichment*

In Count VII of their Amended Complaint, Plaintiffs' claim MacKoul was unjustly enriched when he took Bailin corporate funds for himself as a salary rather than investing those funds in stormwater and erosion and sediment control to prevent the pollution of the Pond. MacKoul argues he is entitled to summary judgment both because the unjust enrichment claim is barred by the statute of limitations and because Plaintiffs cannot reasonably expect to prove he was unjustly enriched. The statute of limitation argument fails because Plaintiffs did not learn until 2012 that MacKoul had been taking funds from Bailin. Under Massachusetts law, "regardless of the actual time of breach or injury, 'a cause of action does not accrue until a plaintiff discovers, or reasonably should have discovered, that she may have been injured as a result of the defendant's conduct.'" *Cambridge Plating Co., Inc. v. Napco, Inc*., 991 F.2d 21, 25 (1st Cir. 1993) (quoting *Hoult v. Hoult*, 792 F.Supp. 143, 144 (D.Mass.1992)).  The unjust enrichment claim did not accrue, then, until Plaintiffs discovered in 2012 that MacKoul had been taking funds from Bailin, and the three year statute of limitations had not run when this claim was brought in August 2012.

"To recover for unjust enrichment under Massachusetts law, [a plaintiff] must show that (1) [defendant] knowingly received a benefit (2) at his expense (3) under circumstances that would make retention of that benefit unjust." *Frappier v. Countrywide Home Loans, Inc*., 645

F.3d 51, 58 (1st Cir. 2011). Here, Plaintiffs fail to put forth evidence of any material fact showing MacKoul was unjustly enriched. Plaintiffs argue that because MacKoul, a 10% owner in Bailin, received checks from Bailin in 2010 and 2011 totaling $37,500, rather than putting that money towards sediment control, MacKoul was unjustly enriched. Plaintiffs have put forth no facts, however, suggesting that MacKoul's receipt of this money was at Plaintiffs expense. Nothing on the record shows that the money MacKoul received would have gone toward sediment control had it not gone to MacKoul, that MacKoul had any authority to decide which funds went to investment and which to his salary, or that Bailin failed to implement any sediment or erosion control measures due to a lack of funds. In fact, Middlesex Bank, the construction lender, essentially took over Bailin's finances in 2008 and never denied funding for the performance of recommended maintenance or reports of the stormwater management system. There is nothing, then, that suggests MacKoul was enriched at Plaintiffs' expense or that the retention of the funds he received would be unjust. As the record is devoid of facts necessary to support Plaintiffs unjust enrichment claim, summary judgment is granted in favor of MacKoul on Count VII.

*Statute of Repose*

Defendants argue that any claims against TLA and Healy are based on allegations of defects in their design of the CCRC's stormwater management system and should, therefore, be barred by the Statute of Repose. The Statute of Repose, M.G.L. c. 260, § 2B, provides, in relevant part:

> Action of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property ... shall be commenced only within ... six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession for occupancy by the owner.

Plaintiffs respond that this does not apply because Plaintiffs' claims are not based only on design defects, but also on TLA and Healy's actions as conultations and because sedimentation control barriers and temporary settling basins are not permanent additions to or betterments to real property. The record shows TLA and Healy did provide consultation to Bailin through the transfer of the development to another developer in 2011. To the extent Plaintiffs' remaining claim against TLA and Healy is based on this post-construction consultation, it is not barred by the Statute of Repose.

For the purposes of M.G.L. c. 260, § 2B, an improvement is "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Snow v. Harnischfeger Corp.*, 12 F.3d 1154, 1161 (1st Cir. 1993) (quoting *Milligan v. Tibbetts Eng'g Corp.*, 391 Mass. 364, 461 N.E.2d 808, 811 (1984)). While some of the features Plaintiffs complain of may have been intended as permanent additions, others were only temporary measures installed for use during the construction phase only. The summary judgment record leaves open a question of fact as to the whether the designs Plaintiffs complain of constitute improvements to real proper; thus summary judgment cannot enter on the grounds that the claims against TLA and Healy are barred by the statute of repose. *Fine v. Huygens, DiMella, Shaffer & Associates*, 57 Mass. App. Ct. 397, 402, 783 N.E.2d 842, 847 (2003) ("whether the statute of repose bars claims against [the defendants] depends upon whether the summary judgment record discloses that there is no genuine issue of material fact as to whether the defendants were involved in the design, planning, construction or general administration of an improvement to real property.") (internal quotations omitted).

*Damages*

Finally, Defendants argue that summary judgment should be entered in favor of all Defendants because Plaintiffs have failed to create a material fact dispute that Defendants caused Plaintiffs to incur any damages. Specifically, Defendants argue that Plaintiffs have failed to create a triable issue of fact that the condition of the Pond changed or that any such change was due to the Salisbury Hill Property. This Court disagrees; as explained above, the record contains evidence, including videos that show sediment being discharged from the Salisbury Hill Property and flowing down to the Pond, and the brown condition of the Pond after such events, testimony from James P. Vander Salm and Judith P. Vander Salm regarding observing silt-laden stormwater being discharged from Salisbury Hill, flowing into the stream that feed the Pond, and turning the Pond brown with suspended silt for days, Plaintiffs' testimony that the algae was not present prior to these sediment discharges, and Plaintiffs' expert's opinion that the weed and algae growth in the Pond has been caused by alien sediment, that could lead a reasonable jury to find the Pond had been damaged by Defendants. This evidence, particularly Plaintff's testimony that the algae was not present before the sediment discharges, also creates a question of fact as to the condition of the Pond at the time of the alleged injury. While Defendants have introduced conflicting evidence that the pond was "clearly eutrophic" in 1985, this only goes to show there is a question of fact, not that Defendants are entitled to judgment as a matter of law

Defendants also argue that even if Plaintiffs demonstrate the Pond was adversely impacted, they are not entitled to recover damages in the form of restoration costs because they have not shown they have a legal right to dredge the Pond. Defendants claim that Plaintiffs, as owners of part of the Pond in fee and owners of an easement over remaining part of the Pond, have not established they are entitled to restoration costs, and should be limited to damages for

diminution in value associated with the alleged loss of use of the recreational easement. Plaintiffs' easement includes the following language: "Said premises are conveyed with a right to grantees, their heirs and assigns, to bathe, fish, stock with fish, boat, skate, and enjoy for all recreational purposes the said pond" and includes the right, but not obligation, of the grantees to fix the Pond's dam if it is ever destroyed.

"[A]n owner of an easement has a right to go upon the servient land to do acts reasonably necessary for a proper use and enjoyment of the easement." *Mt. Holyoke Realty Corp. v. Holyoke Realty Corp.*, 292 Mass. 332, 336, 198 N.E. 242, 244 (1935); *Mt. Holyoke Realty Corp. v. Holyoke Realty Corp.*, 298 Mass. 513, 514, 11 N.E.2d 429 (1937) ("Every right necessary for the enjoyment of an easement is included in it by implication….The right to make necessary repairs is an incident to the easement."); *Guillet v. Livernois*, 297 Mass. 337, 340, 8 N.E.2d 921, 922 (1937). For example, when one has an easement to use a private way, he is entitled to make any reasonable repairs and improvements, especially when without improvement the way is useless. *Guillet*, 297 Mass. at 340. Here, Plaintiffs have put forth evidence that their easement for recreational use has become useless; this, if proven, gives them the right to repair the Pond so that they may enjoy the easement again. This case is unlike those cited by Defendants where an easement holder sought to place or erect some fixture on the servient property; here, Plaintiffs merely seek to return the property to its prior state. *See Ward v. McGlory*, 358 Mass. 322, 324-325 (1970) (placement of electric poles beside right of way exceeded scope of easement, as erection of poles constituted a "new and additional burden" on servient land); *Ampagoogian v. Atamian*, 323 Mass. 319, 322 (1948) (plaintiff's right of way over driveway implied no right to lay gas pipes beneath it). This Court will not, then, enter an order that Plaintiffs' cannot recover damages in the form of restoration costs.

## **Conclusion**

For the reasons set forth above, Plaintiffs' Motion for Partial Summary Judgment (Docket No. 184) is **denied** and Defendants Motion for Summary Judgment (Docket No. 161) is **granted** in part and **denied** in part. Summary judgment is **granted** in favor of all relevant Defendants included in this motion on Counts II, III, IV, and VII. Summary judgment is **granted** in favor of TLA and Healy only on Count VI. Summary judgment is **denied** on Counts I and V.

SO ORDERED.

*/s/ Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**UNITED STATES DISTRICT JUDGE**