IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES P. VANDER SALM and<br>JESSICA T. VANDER SALM, as Trustees<br>of the Judith P. Vander Salm Irrevocable Trust,<br>and JUDITH P. VANDER SALM,<br><br>        Plaintiffs,<br><br>v.<br><br>BAILIN & ASSOCIATES, INC.,<br>the SALISBURY HILL CONDOMINIUM TRUST,<br>PETER T. KARASSIK, individually,<br>JOHN L. MACKOUL, individually,<br>THOMPSON-LISTON ASSOCIATES, INC.,<br>PATRICK J. HEALY, individually,<br>ROTTI CONSTRUCTION COMPANY, INC.,<br>WALTER R. ROTTI, individually,<br>ECOTEC, INC.,<br>and PAUL J. MCMANUS, individually,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL ACTION 4:11-cv-40180-TSH |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTIONS IN LIMINE (DKTS. 268 AND 271) TO EXCLUDE RFERENCES TO PROPOSED EPA STANDARD OF 280 NTU OR OPINION OF JOSEPH BELLINO CONCERNING 50 NTU

The Defendants Bailin & Associates, Inc., Peter T. Karassik, John L. MacKoul,

Thompson-Liston Associates, Inc., Patrick J. Healy, Rotti Construction Company, Inc. and

Walter R. Rotti ("Defendants") hereby oppose the Plaintiffs' motions *in limine* to preclude:

1) reference to an EPA numerical stormwater turbidity limit of 280 NTU; and 2)

communications from Joseph Bellino, of MA DEP, indicating that stormwater discharges with a

turbidity level of less than 50 NTU were acceptable.  Plaintiffs' Motion should be denied, as

these parameters are relevant.  In addition, rather than confusing the jury as Plaintiffs contend,

this evidence will actually serve to assist and educate the factfinder.

## I.      <u>LEGAL STANDARD</u>

Under Rule 401 of the Federal Rules of Evidence, evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and
(b) the fact is of consequence in determining the action.

Relevant evidence may only be excluded under FRE 403 only if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

## II.      <u>ARGUMENT</u>

The basis for Plaintiffs' surviving claims is that Defendants committed trespass, nuisance and/or violations of the Clean Water Act by causing or allowing the discharge of stormwater from Salisbury Hill, which Plaintiffs allege carried silt and/or sediment downstream to the South Pond and caused the pond to eutrophy.  Accordingly, a central issue  in this action is whether and to what extent silt or sediment was carried from Salisbury Hill and deposited in the South Pond.

Measurements of the turbidity (cloudiness or haziness) of water are used as a surrogate for evaluating the presence of suspended sediments.  Measuring and reporting turbidity as Nephalometric Turbidity Units ("NTU") is standard practice, and regularly required by environmental regulators.  It provides reliable instantaneous results with equipment that is simple to operate and not readily subject to operator error.  Turbidity, measured as NTU is a measure of the scattering and absorption of light that is projected through a liquid, "primarily caused by the suspended solids" (source: Hanna Instruments Model HI98703 Instruction Manual, attached hereto as <u>Exhibit 1</u>).

Thus, turbidity measurements taken at Salisbury Hill are highly relevant to the questions

of whether, and how much, silt or sediment was discharged from the site.  During the course of this trial, the jury will hear extensive testimony regarding sampling conducted by Defendants Paul McManus and EcoTec, including sampling of water at the outfall of the site's detention basin as well as water in the intermittent stream feeding the North and South Ponds.

NTU is not a unit of measure that is likely to be familiar to a juror.  Accordingly, evidence of EPA and DEP standards or guidance concerning what constitutes "high" or "low" levels of NTU will provide context for the jury.  This evidence is highly relevant, as it will provide the jury with a framework for determining whether it is more likely than not that Defendants are the source of the sediment at the base of the South Pond.

In addition, the introduction of this evidence would not confuse or mislead the jury so as to substantially outweigh its inherent probative value.  On the contrary, it will be more confusing for the jury if they hear testimony concerning the turbidity readings of stormwater discharge from Salisbury Hill but are given no frame of reference for understanding the significance of this data.  Plaintiffs' position is analogous to a case where one is charged with driving too fast, but is precluded from introducing any evidence of the speed travelled and the speed limit, and can only rely on images of the moving vehicle.

Plaintiffs' concerns regarding the applicability of the EPA numerical limit of 280 NTU and the 50 NTU standard imposed by Mr. Bellino go to the weight, not the admissibility, of this evidence.  The US EPA labeled the proposed standard a "*numeric effluent limit of 280 NTU*". See Exhibit 2 (EPA summary document, referencing Federal Register publication).  The limit was stayed and then vacated because EPA concluded that 280 NTU was more strict than EPA could justify.  Likewise, Mr. Bellino is a technical analyst with MADEP.  As such, he exercises discretion in determining whether enforcement action is appropriate.  Plaintiffs are free to

challenge the significance of these benchmarks and introduce evidence regarding any limitations associated with these approaches.  Therefore, Plaintiffs will not be unduly prejudiced by the admission of this evidence.

Plaintiffs also allege that no sediment was permitted to pass from Salisbury Hill to the South Pond. Pls.'s Mot. at 2-3. However, the jury must decide what constitutes "no sediment." Certainly, there is a level so microscopic and de minimus that it should constitute "no sediment." Likewise, there is certainly a level so sizeable that it obviously violates the alleged "no sediment" rule. If sediment did flow from Salisbury Hill to the South Pond, determining if the flow contained a sufficient quantity of sediment to constitute trespass is a question of fact for the jury to decide. The admission of the EPA and DEP standards serve to assist the jury in making this decision – not confuse them. Accordingly, Plaintiffs' motion should be denied.


**WHEREFORE**, the Defendants respectfully request that this Court deny Plaintiffs' Motions in *Limine*.


*[this space intentionally left blank]*

Respectfully submitted,
Defendants,
BAILIN & ASSOCIATES, INC.,PETER
KARASSIK, JOHN MACKOUL,ROTTI
CONSTRUCTION, WALTER
ROTTI,THOMPSON-LISTON ASSOCIATES and
PATRICK HEALY,
By their attorneys,
/s/ *Catherine A. Bednar*
Jeffrey L. Alitz, Esq. (BBO# 553741)
*Jeffrey.Alitz@leclairryan.com*
Catherine A. Bednar, Esq. (BBO#667394)
*Catherine.Bednar@leclairryan.com*
LeClairRyan, *A Professional Corporation*
One International Place, Eleventh Floor
Boston, Massachusetts 02110
617.502.8200 (telephone)
617.502.8201 (facsimile)


Joined by,
Defendants,
ECOTEC, INC., and
PAUL J. MCMANUS,
By their Attorney,
/s/ *Wesley J. Marshall*
Wesley J. Marshall, Jr., BBO #321580
wmarshall@morrisonmahoney.com
MORRISON MAHONEY LLP
250 Summer Street
Boston, MA 02210
617-439-7500

Defendant,
Salisbury Hill Condominium Trust,
By its attorney,
/s/*Angelo P. Catanzaro*
Angelo P. Catanzaro (BBO# 078960)
CATANZARO AND ALLEN
100 Waverly Street
Ashland, MA 01721
(508) 881-4566
apc@catallen.com

Dated: June 16, 2014

5

## <u>CERTIFICATE OF SERVICE</u>

I, Catherine A. Bednar, hereby certify that this document was filed through the ECF system and that notice will be sent electronically to all counsel of record on this 16th day of June, 2014.

*/s/ Catherine A. Bednar*